Tucker, P.
Without impugning the principles laid down by Starkie and Philips, in the passages cited by the appellant’s counsel, I am of opinion, that there was no error in the admission of the testimony set forth in the first bill of exceptions. The value of the land was certainly material to the issue. The evidence of the witness as to the value, was, of course, directly applicable to the issue, and every fact going to disprove his valuation was, in like manner, material or applicable. For what goes to disprove evidence that is directly applicable, must be itself directly applicable. It, cannot be deemed collateral only. Thus, it cannot be *406 denied, that if, in detinue, a witness swears that the value of a horse is 100 dollars, evidence would be admissible to prove that he had sworn, upon a formal trial, that he was worth only 50 dollars. And if such ■ evidence as this would be within the issue, and not collateral but direct, evidence of his declarations not on oath, though less strong, would certainly not be less direct. In like manner, though evidence that he had offered the same horse for the price of 50 dollars, might not be as strong as the evidence of his declarations, because he might be asking a higher price than he really thought the property worth, yet certainly it cannot be fairly affirmed to be less direct. I think, therefore, it was proper to permit evidence to contradict the testimony of the witness as to the price at which he had offered the land.
The question presented by the second bill of exceptions is more difficult. The first count in the declaration goes distinctly enough for the failure to deliver the bond according to contract. Now, I think, there can be no question, that as to this count, the evidence was conclusive against the plaintiff. For, certainly, if the defendant did draw and deliver the order to the plaintiff, and the plaintiff did accept the same in the place of actual delivery into his hands, of the title bond itself, it was a sufficient fulfilment of the contract to deliver, and a discharge of the defendant in this action. The original contract to deliver was satisfied and at an end, whatever other rights might have become vested in the plaintiff by the act done in satisfaction.
What then was the effect of that act ? what rights did it confer on the plaintiff? 1. By the delivery of the order, and its acceptance in the place of the actual delivery of the bond, the title to the bond absolutely passed. Pleasants v. Pendleton, 6 Rand. 473. If it had been afterwards burnt, lost or destroyed, the loss would have been Daniels’s, not Conrad’s. 2. By that delivery and passing of title, the property in the bond itself so passed, that if Phelps or Parle had it in their possession, trover or detinue would have lain for it, whether they accepted the order or not. And if they *407 Lad it not, those actions might have been sustained by the plaintiff against any person in whose possession it might happen to be, even the defendant himself. And if it was found not to be in Phelps’s or Earle’s hands, whose concern was it to search for it, after the plaintiff had received the order as an actual delivery into his hands of the bond itself? It was, surely, the plaintiff’s concern. The defendant was not only not bound to search or sue for it, as he had discharged himself from all further connexion with it, but he had no right to sue for it. He could neither have brought trover nor detinue, nor even a bill of discovery against Phelps or Earle, or any other person. The delivery had passed away the property, and left him powerless over the subject. 3. The right of property in the subject, would have enabled Daniels to sue the obligors at law or in equity on the lost bond, and establish it by the evidence of the defendant himself. Or he might have sued Phelps and Earle, and called upon the defendant to prove their possession; or lie might have brought them all into equity, on the ground that the money was due to him, and demanded, that the obligors should pay it to him accordingly; that Phelps and Earle should give it up, or account for it; or that the defendant, should surrender it if he had it, or pay him the amount of it, if there had been in fact no such bond as he represented. And 4. In like manner, he might at law have sued the defendant in detinue or trover, if the defendant had the bond, or he might sue him in an action for deceit, or even in assumpsit, if he had pretended to sell him a bond, which had no existence. These remedies are still open to him if he is injured. But l do not think he could sue him in assumpsit, after receiving this order as a full compliance with the contract to deliver the bond; and therefore the proof of that fact was a complete bar of his action.
I am therefore of opinion, that there is no error in the judgement.
The other judges concurred. Judgement affirmed.